UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT SCOTT RICHARDS,

        Petitioner,

     v.

DEBRA SCUTT,

        Respondent.[1]

_____/

CASE NO. 2:10-CV-10244

JUDGE MARIANNE O. BATTANI

MAGISTRATE JUDGE PAUL J. KOMIVES

# REPORT AND RECOMMENDATION

*Table of Contents*

I.     RECOMMENDATION ................................................................. 2
II.    REPORT ........................................................................ 2
    A.    *Procedural History* ....................................................... 2
    B.    *Factual Background Underlying Petitioner's Conviction* ..................... 3
    C.    *Standard of Review* ...................................................... 5
    D.    *Analysis* ............................................................... 7
        1.    *Guidelines Scoring* ............................................. 7
        2.    *Credit for Time Served* ........................................ 11
        3.    *Blakely* ...................................................... 15
    E.    *Recommendation Regarding Certificate of Appealability* ................... 19
        1.    *Legal Standard* ............................................... 19
        2.    *Analysis* .................................................... 20
    F.    *Conclusion* ............................................................. 21
III.   NOTICE TO PARTIES REGARDING OBJECTIONS ..................................... 21

\*     \*     \*     \*     \*

I.     RECOMMENDATION: The Court should deny petitioner's application for the writ of

habeas corpus and should deny petitioner a certificate of appealability.

II.    REPORT:

A.    *Procedural History*

_____

[1]By Order entered this date, Debra Scutt has been substituted for Thomas Bell as the proper respondent in this action.

1.      Petitioner Vincent Scott Richards is a state prisoner, currently confined at the Parnall Correctional Facility in Jackson, Michigan.

2.      On January 16, 2008, petitioner was convicted of domestic violence, third offense, MICH. COMP. LAWS § 750.81(4); and of being an habitual offender, fourth offense, MICH. COMP. LAWS § 769.13, pursuant to his guilty plea in the Oakland County Circuit Court.  On February 15, 2009, he was sentenced to a term of 46 months' to 15 years' imprisonment.

3.      Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising, through counsel, the following claims:

I.      THE TRIAL COURT VIOLATED APPELLANT'S DUE PROCESS RIGHTS BY USING THE WRONG SENTENCING GUIDELINE RANGE; ALTERNATIVELY, DEFENSE TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT.

II.     DEFENDANT IS ENTITLED TO CREDIT ON THE MINIMUM TERM FOR THE TIME SERVED PRIOR TO SENTENCING DESPITE COMMITTING THIS OFFENSE WHILE ON PAROLE BECAUSE THERE IS NO OTHER WAY THAT TIME ON THE MINIMUM TERM IN THIS CASE WILL EVER BE CREDITED, THUS VIOLATING STATUTORY LAW REGARDING CONSECUTIVE SENTENCING AND JAIL CREDIT.

III.    DEFENDANT'S CONSTITUTIONAL DOUBLE JEOPARDY, DUE PROCESS, AND EQUAL PROTECTION GUARANTEES WERE VIOLATED WHERE HE RECEIVED NO CREDIT AGAINST THE NEW MINIMUM SENTENCE FOR A CRIME COMMITTED WHILE ON PAROLE, US CONST, AMS V, XIV; CONST 1963, ART 1, §§ 15, 17, 20.

IV.     MR. RICHARDS IS ENTITLED TO RESENTENCING, UNDER THE UNITED STATES SUPREME COURT'S DECISION IN *BLAKELY V. WASHINGTON*, 542 US 296; 124 S CT 2531, 159 L ED 2D 403 (2004).

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack of merit in the grounds presented." *People v. Richards*, No. 286782 (Mich. Ct. App. Sept. 10, 2008).

4.      Petitioner sought leave to appeal these issues to the Michigan Supreme Court.  The

Supreme Court initially held the application in abeyance pending its decision in *People v. Idziak*. *See People v. Richards*, 762 N.W.2d 525 (2009). On July 31, 2009, the Supreme Court issued its decision in *Idziak*, holding that a defendant arrested on a new offense committed while on parole is not entitled to credit against the new sentence for the time served in custody before sentencing, and that a denial of such credit does not constitute multiple punishments in violation of the Double Jeopardy Clause. *See People v. Idziak*, 484 Mich. 549, 773 N.W.2d 616 (2009). Thereafter, the Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Richards*, 775 N.W.2d 324 (2009). Justice Markman dissented from the denial of leave, expressing his view that Offense Variable 3 (OV 3) was improperly scored. *See id*. at 325-26. Justice Corrigan filed a concurring opinion, expressing her view that OV 3 was properly scored. *See id*. at 324-24.

5.     Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on January 19, 2010. As grounds for the writ of habeas corpus, he raises the four claims that he raised in the state courts.

6.     Respondent filed her answer on August 3, 2010. She contends that petitioner's claims are either without merit or not cognizable on habeas review.

7.     Petitioner filed a reply to respondent's answer on September 16, 2010.

B.     *Factual Background Underlying Petitioner's Conviction*

Petitioner pleaded guilty to domestic assault arising from the assault of his girlfriend. The circumstances of the assault, as reflected in the presentence report and preliminary examination transcript, was accurately summarized in Justice Corrigan's opinion concurring in the denial of leave to appeal:

The presentence report and the preliminary examination transcript . . . reflect the severity of the beating that defendant inflicted on the victim. Defendant grabbed the victim by the hair and stated that he was going back to prison because of her. he punched her in the face several times. As the victim went into the kitchen to try to grab a knife for protection, defendant again grabbed her by the hair, dragged her into the living room, and got on top of her, pinning her down. Defendant then grabbed the victim around the throat and began choking her to the point that she could no longer breathe. The victim felt completely helpless and was unable to speak. Defendant told her, "I'll kill you, I'll kill you and I'm going back to prison for this." The victim later recounted that as defendant was choking her, she thought she was going to die before help arrived. Defendant finally let up long enough for her to scream and get to her cell phone to call 911.

When police officers arrived, they saw that the victim had large thick abrasions on both sides of her neck. The victim also had a bruise and a swollen right cheek, and she complained that her arms were hurting from blocking defendant's punches to her face. When the presentence report was later prepared, however, the victim stated that she did not go to the hospital for her injuries and that she believed the situation was blown out of proportion.[1]

> [1]As often happens in domestic violence cases, the victim in this case did not cooperate with the prosecution.

*Richards*, 775 N.W.2d at 324-25.

At sentencing, despite the victim's lack of cooperation, the presentence report scored OV 3 at 10 points for petitioner causing injury requiring medical treatment, rather than at 5 points, for causing injury not requiring medical treatment. *See* MICH. COMP. LAWS § 777.33(1). Petitioner did not object to the guidelines scoring, resulting in a range of 5-46 months for the minimum term of imprisonment. Pursuant to petitioner's plea agreement, the trial court sentenced petitioner within this range, imposing a minimum term of 46 months' imprisonment.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

4

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539

5

U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases—indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.    *Analysis*

Petitioner's claims all challenge his sentence in various respects. For the most part, these

6

claims are not cognizable on habeas review. With respect to the claims that are cognizable, the Court should conclude that petitioner is not entitled to habeas relief.

  1. *Guidelines Scoring*

  Petitioner's first claim challenges the scoring of OV 3 at 10 points. Petitioner also contends that counsel was ineffective for failing to object to the scoring of OV 3 at 10 points.

  A habeas petitioner's claim that the trial court violated state law when sentencing him is not cognizable in habeas corpus proceedings. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Haynes v. Butler*, 825 F.2d 921, 924 (5th Cir. 1987). Federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner's claim that the court improperly scored or departed from the guidelines range raises issues of state law that are not cognizable on habeas review. *See Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (Gadola, J.) (claim that sentencing court departed from Michigan sentencing guidelines presents an issue of state law only and is, thus, not cognizable in federal habeas review); *Welch v. Burke*, 49 F. Supp. 2d 992, 1009 (E.D. Mich. 1999) (Cleland, J.) (same); *see also, Branan*, 851 F.2d at 1508 (claim that court misapplied state sentencing guidelines not cognizable on habeas review). Thus, petitioner is not entitled to habeas relief on his claims relating to the trial court's scoring of, or departure from, the Michigan sentencing guidelines.

  Nor can petitioner show that counsel was ineffective for failing to object to the scoring of OV 3. The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To

7

establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *Id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Id.* With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same).

As the Supreme Court has recently explained, *Strickland* establishes a high burden that is difficult to meet, made more so when the deference required by § 2254(d)(1) is applied to review

a state court's application of *Strickland*:

> "Surmounting Strickland's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. ----, ----, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S.Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S.Ct. 2052.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689, 104 S.Ct. 2052; *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S., at ----, 129 S.Ct. at 1420. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. 556 U.S., at ----, 129 S.Ct. at 1420 . Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

*Harrington v. Richter*, 131 S. Ct. 770, 788 (2011).

Under these high standards, petitioner cannot show that counsel was ineffective for failing to object to the scoring of OV 3. This offense variable requires the assessment of 10 points if "[b]odily injury requiring medical treatment occurred to a victim," but only 5 points if "[b]odily injury not requiring medical treatment occurred to a victim." MICH. COMP. LAWS § 777.31(1)(d),

(e).[2]  As petitioner notes and as Justice Markman observed in dissenting from the denial of leave to appeal, "[t]he victim here testified that she did not seek medical treatment for her injuries because she considered them 'superficial.'  The presentence investigation report further describes the injuries as bruises and abrasions for which no medical treatment was sought."  *Richards*, 775 N.W.2d at 325 (Markman, J., dissenting).  Justice Markman thought these facts dispositive of the issue, concluding that they would have supported only a score of 5 points for bodily injury not requiring medical treatment.  *See id.*  Justice Corrigan, on the other hand, noted that the victim did not cooperate with the police, as is common in domestic abuse cases, and concluded that the extent of the assault and the victim's injuries as reported in the presentence report were sufficient to support a finding that the injuries required medical treatment.  *See id.* at 324-25 (Corrigan, J., concurring).

At the time of petitioner's sentencing, however, counsel did not have the benefit of these explications of OV 3, and even if he did the conflicting views of Justices Corrigan and Markman would have provided little guidance to counsel on whether an objection to the scoring would have been proper.  More importantly, petitioner points to no decisions available to counsel at the time of sentencing that would have suggested to counsel that it was inappropriate for the court to score OV 3 at 10 points merely because the victim did not seek medical treatment.  And, on the contrary, the statute explicitly provides that "[a]s used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment."  MICH. COMP. LAWS § 777.31(3).  Thus, at the time of sentencing, counsel had available to him only (a) facts which

---

[2]OV 3 also provides for an assessment of either 100 or 50 points if a victim was killed, 25 points if life threatening or permanently incapacitating injury was inflicted, and 0 points if no injury occurred. *See* MICH. COMP. LAWS § 777.31(a)-(c), (f).  Neither petitioner nor respondent here, nor the parties in state court, argued that any of these provisions was applicable.  Thus, the only question was whether OV 3 should have been scored at 10 points or 5 points.

suggested that victim suffered injuries which may have required medical treatment, even if she did not seek such treatment, (b) statutory language explicitly stating that it is the necessity of treatment, and not the actual obtaining of treatment, that is relevant for scoring OV 3, and (c) no case law suggesting that the trial court's scoring was improper.  An objection would thus have required counsel to raise a novel issue of law that, at a minimum, appears to conflict with the statutory language.  Although "[i]gnorance of well-defined legal principles is nearly inexcusable," "the rule that an attorney is not liable for an error of judgment on an unsettled proposition of law is universally recognized."  *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir.1999) (internal quotations omitted).  Thus, "[f]ailure of . . . counsel to present a novel legal argument when the caselaw is ambiguous does not constitute ineffective assistance."  *Alexander v. Smith*, 311 Fed. Appx. 875, 887 (6th Cir. 2009).  Counsel therefore cannot be deemed ineffective for failing to raise this novel challenge to the scoring of OV 3.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

2.    *Credit for Time Served*

Petitioner next contends that the trial court erred in failing to credit the time spent in custody prior to sentencing against the minimum term of imprisonment because he committed the offense while on parole.  He also argues that the failure of the trial court to do so deprived him of equal protection and his right to be free from double jeopardy.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

Michigan's jail credit statute provides:

> Whenever any person is hereafter convicted of any crime within this state and has served any time in jail prior to sentencing because of being denied or unable to furnish bond for the offense of which he is convicted, the trial court in imposing sentence shall specifically grant credit against the sentence for such time served in

11

jail prior to sentencing.

MICH. COMP. LAWS § 769.11b.  However, in *People v. Idziak*, 484 Mich. 549, 773 N.W.2d 616

(2009), the Michigan Supreme Court held that

> the jail credit statute does not apply to a parolee who is convicted and sentenced to
> a new term of imprisonment for a felony committed while on parole because, once
> arrested in connection with the new felony, the parolee continues to serve out any
> unexpired portion of his earlier sentence unless and until discharged by the Parole
> Board. For that reason, he remains incarcerated regardless of whether he would
> otherwise be eligible for bond before conviction on the new offense. He is
> incarcerated not "because of being denied or unable to furnish bond" for the new
> offense, but for an independent reason. Therefore, the jail credit statute, MCL
> 769.11b, does not apply.

*Id*. at 562-63, 773 N.W.2d at 624.  Because petitioner committed his offense while on parole, as a

matter of state law he was not entitled to credit against his sentence for the time served prior to his

sentencing on the new offense.  It is well established that habeas corpus is not available to remedy

a state court's error in the application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine

state-court determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir.

1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own

laws.").  "[T]he interpretation of state crediting statutes is a matter of state concern and not a proper

function of a federal court under its habeas corpus jurisdiction." *Travis v. Lockhart*, 925 F.2d 1095,

1097 (8th Cir. 1991); *see also*, *Howard v. White*, 76 Fed. Appx. 52, 53 (6th Cir. 2003); *Coates v.

Bell*, No. 08-13773, 2010 WL 522841, at *8 (E.D. Mich. Feb. 9, 2010).  Thus, petitioner is not

entitled to habeas relief based on the trial court's failure to grant him credit against his minimum

term of imprisonment for the time spent in custody prior to sentencing.

Nor can petitioner show that the failure to grant him credit for this time violated the Double

Jeopardy Clause.  The Fifth Amendment to the United States Constitution commands that no "person be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  The Double Jeopardy Clause, which is applicable to the states through the Due Process Clause of the Fourteenth Amendment, *see Benton v. Maryland*, 395 U.S. 784, 794 (1969), provides three basic protections: "[It] protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense."  *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted).  "These protections stem from the underlying premise that a defendant should not be twice tried or punished for the same offense."  *Shiro v. Farley*, 510 U.S. 222, 229 (1994) (citing *United States v. Wilson*, 420 U.S. 332, 339 (1975)).  Where a claim is made that a defendant is being twice punished for the same offense, the question becomes one of legislative intent.  "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent."  *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted).  If the legislature intended to impose the multiple punishments, the "court's inquiry is at an end" and there is no double jeopardy violation.  *Id*. at 499 n.8.  In making this determination, the Court is bound by the Michigan courts' interpretation of state law.  *See Rodgers v. Bock*, 49 Fed. Appx. 596, 597 (6th Cir. 2002); *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989).

As the Michigan Supreme Court explained in *Idziak*, here the Double Jeopardy Clause is not implicated because no multiple punishment has been imposed for the same offense.  Contrary to petitioner's argument, his time spent in custody prior to sentencing was not a criminal punishment for the new offense, for which he was later sentenced.  Rather, as a matter of state law, the time

13

spent in custody was merely a continuation of his earlier sentence for which he was on parole.  Thus,

there was no double jeopardy violation.  *See Idziak*, 484 Mich. at 570, 773 N.W.2d at 628; *see also*,

*Franklin v. Curtin*, No. 2:08-CV-13274, 2010 WL 2232228, at *4 (E.D. Mich. May 27, 2010)

(Rosen, J.); *Wiillavize v. Howes*, No. 1:09-cv-62, 2009 WL 4639483, at *4 (W.D. Mich. Dec. 2,

2009).

Nor did the failure to grant petitioner credit violate his right to equal protection of the laws.

As Judge Rosen explained in rejecting this same claim:

> Petitioner also claims that the denial of sentence credit violates the Equal
> Protection Clause. The Equal Protection Clause mandates that all persons, who are
> similarly situated, should be treated alike. See *City of Cleburne v. Cleburne Living
> Center, Inc.*, 473 U.S. 432, 439 (1985). Nevertheless, "[t]o withstand Fourteenth
> Amendment scrutiny, statutes that do not interfere with fundamental rights or single
> out suspect classifications must bear only a rational relationship to a legitimate state
> interest." *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 574 (6th Cir. 2002),
> citing *City of Cleburne*, 473 U.S. at 440. Federal courts have consistently held that
> prisoners do not constitute a suspect class. *See Hadix v. Johnson*, 230 F.3d 840, 843
> (6th Cir. 2000). In addition, there is no fundamental right at issue. *See Grays v.
> Lafler*, 618 F. Supp. 2d 736, 747 (W.D. Mich. 2008) (citing *Hansard v. Barrett*, 980
> F.2d 1059, 1062 (6th Cir. 1992)).
>
> Legislation which does not classify by race, alienage, national origin, or
> gender and which does not impinge on personal rights protected by the Constitution
> need only be rationally related to a legitimate state interest. *Cleburne*, 473 U.S. at
> 440. Under the rational basis standard, the challenging party bears the burden of
> demonstrating that there is no rational connection between the legislation and a
> legitimate state interest. *See Harrah Independent School Dist. v. Martin*, 440 U.S.
> 194, 198 (1979).
>
> In the case of parolees who commit new crimes while serving a term of
> parole, the State has a legitimate interest in applying credit for time served to the
> remainder of the sentences for their previous offenses, that is, enforcing its laws in
> a way that protects its citizens from recidivists. *See Wiillavize v. Howes*, No.
> 1:09-cv-62, 2009 WL 4639483 at *4 (W.D. Mich. Dec.2, 2009). "Sentencing laws
> that prescribe consecutive sentences on parolees who commit new crimes while on
> parole are rationally related to that objective. And detaining parolees on parole holds
> while the new crimes are adjudicated is a rational choice as well." *Holloway v.
> Trombley*, No. 05-cv-10276, 2009 WL 270166, *9 (E.D. Mich. Feb.3, 2009). Thus,
> the Court finds no violation of the Equal Protection Clause.

14

*Franklin*, 2010 WL 2232228, at *3-*4 (parallel citations omitted).  Because the denial of credit does not implicate a suspect classification or a fundamental right, and because it is rationally related to a legitimate state interest, the failure to grant credit to petitioner did not violate the Equal Protection Clause.  *See Franklin*, 2010 WL 2232228, at *3-*4; *Wiillavize*, 2009 WL 4639483, at *3-*4; *Holloway v. Trombley*, No. 05-CV-10276, 2009 WL 270166, at *9-*10 (E.D. Mich. Feb. 3, 2009) (Lawson, J.); *Idziak*, 484 Mich. at 570-74, 773 N.W.2d at 628-30.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

      3.    <u>*Blakely*</u>

Finally, petitioner contends that his sentence violates the rule of *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  In *Apprendi*, the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490.  In *Blakely*, the Court considered the applicability of *Apprendi* to a state sentencing guidelines scheme similar to the United States Sentencing Guidelines.  The state in that case argued that guidelines findings were not prohibited by *Apprendi* because *Apprendi* prohibited only factual findings at sentencing which increased the statutory maximum penalty to which the defendant was exposed.  The Court in *Blakely* rejected this argument and struck down the state guidelines scheme, explaining that:

> the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*  In other words, the relevant "statutory maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts "which the law makes essential to the punishment," and the judge exceeds his proper authority.

*Blakely*, 542 U.S. at 303-04 (citations omitted) (emphasis in original).

Finally, in *United States v. Booker*, 543 U.S. 220 (2005), the Court took the step logically suggested by *Blakely*, concluding that the United States Sentencing Guidelines are unconstitutional under *Apprendi* because they allow federal judges to impose sentences based on facts not found by a jury beyond a reasonable doubt. Two separate majorities formed the Court's decision. Justice Stevens delivered the opinion of the Court on the substantive question of whether the Guidelines are unconstitutional under *Apprendi*. Noting that there was no difference of constitutional significance between the Guidelines and the state guideline system at issue in *Blakely*, *see Booker*, 543 U.S. at 233, and rejecting the government's attempts to distinguish the two, *see id*. at 237-43, the merits majority concluded that the Guidelines violate the Sixth Amendment as interpreted in *Apprendi*. A separate majority joined an opinion authored by Justice Breyer, which contained the Court's decision on the remedial issue. The remedial majority concluded that the appropriate remedy for the constitutional violation was not to strike the Guidelines in their entirety, but to excise two statutory provisions which make the Guidelines mandatory. *See id*. at 245. Thus, under *Booker* the Guidelines remain advisory, and a federal district judge must consult the Guidelines before imposing sentence, but the judge is not bound to follow the Guidelines.

Petitioner contends that, because the trial court made the necessary findings on the sentencing guidelines, his sentence violates *Blakely* and *Apprendi*. However, Michigan law provides for an indeterminate sentencing scheme, unlike the determinate sentencing schemes at issue in *Blakely* and *Booker*. Under Michigan law the defendant is given a sentence with a minimum and a maximum sentence. The maximum sentence is not determined by the trial judge but is set by law. *See People v. Drohan,* 475 Mich. 140, 160-61, 715 N.W.2d 778, 789-90 (2006); *People v. Claypool,*

16

470 Mich. 715, 730 n.14, 684 N.W.2d 278, 286 n.14 (2004); MICH. COMP. LAWS § 769.8. "[M]ichigan's sentencing guidelines, unlike the Washington guidelines at issue in *Blakely*, create a range within which the trial court must set the minimum sentence." *Drohan,* 475 Mich. at 161, 715 N.W.2d at 790. Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255 n.7, 666 N.W.2d 231, 236 n.7 (2003) (discussing MICH. COMP. LAWS § 769.34(2)). Under Michigan law, the trial judge sets the minimum sentence, but can never exceed the maximum sentence. *See Claypool,* 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.

*Blakely* is inapplicable here because *Blakely* is concerned only with the *maximum* penalty which is authorized by a jury's findings or a defendant's plea: if some additional factor increases the defendant's penalty beyond that which could be imposed solely on the basis of the jury's findings or the defendant's plea, *Blakely* requires that those facts be found by a jury beyond a reasonable doubt (or be themselves pleaded to by a defendant). As explained above, unlike the guidelines scheme at issue in *Blakely*, the Michigan sentence guidelines help determine only the minimum portion of a defendant's indeterminate sentence. The maximum is, in every case, the statutory maximum authorized by law. *See Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14; MICH. COMP. LAWS § 769.8. Petitioner's conviction on the domestic assault charge, therefore, contained all of the factual findings necessary to impose the statutory maximum (15 years' imprisonment) on that charge. *See Drohan*, 475 Mich. at 162, 715 N.W.2d at 790 ("Thus, the trial court's power to impose a sentence is always derived from the jury's verdict, because the 'maximum-minimum' sentence will always fall within the range authorized by the jury's verdict.").

This being the case, petitioner's sentence did not violate *Blakely*. The Supreme Court has

repeatedly made clear that the *Apprendi* rule is concerned only with the maximum sentence which

is authorized by a jury's verdict or a defendant's plea. As the Supreme Court explained in *Harris*

*v. United States*, 536 U.S. 545 (2002):

> *Apprendi* said that any fact extending the defendant's sentence beyond the maximum
> authorized by the jury's verdict would have been considered an element of an
> aggravated crime–and thus the domain of the jury–by those who framed the Bill of
> Rights. The same cannot be said of a fact increasing the mandatory minimum (but
> not extending the sentence beyond the statutory maximum), for the jury's verdict
> authorized the judge to impose the minimum with or without the finding.

*Harris*, 536 U.S. at 557. This distinction is important because the only issue under the Sixth

Amendment is whether the judge is impinging on the role of the jury. For this reason, the Court

explicitly excepted indeterminate sentencing schemes such as Michigan's from its holding in

*Blakely*. Rejecting an argument raised by Justice O'Connor in dissent, the Court explained:

> Justice O'Connor argues that, because determinate sentencing schemes
> involving judicial factfinding entail less judicial discretion than indeterminate
> schemes, the constitutionality of the latter implies the constitutionality of the former.
> This argument is flawed on a number of levels. First, the Sixth Amendment by its
> terms is not a limitation on judicial power, but a reservation of jury power. It limits
> judicial power only to the extent that the claimed judicial power infringes on the
> province of the jury. Indeterminate sentencing does not do so. It increases judicial
> discretion, to be sure, but not at the expense of the jury's traditional function of
> finding the facts essential to lawful imposition of the penalty. Of course
> indeterminate schemes involve judicial factfinding, in that a judge (like a parole
> board) may implicitly rule on those facts he deems important to the exercise of his
> sentencing discretion. But the facts do not pertain to whether the defendant has a
> legal *right* to a lesser sentence–and that makes all the difference insofar as judicial
> impingement upon the traditional role of the jury is concerned.

*Blakely*, 542 U.S. at 309 (citation omitted).

Under this reasoning, it is clear that Michigan's indeterminate sentencing guideline scheme,

under which the maximum is established by statute and only the minimum term is based on judicial

factfinding, does not violate the Sixth Amendment. *See Montes v. Trombley*, 599 F.3d 490, 496-97

(6th Cir. 2010); *Mays v. Trombley*, No. 2:06-CV-14043, 2006 WL 3104656, at *3 (E.D. Mich. Oct. 31, 2006) (Hood, J.); *Worley v. Palmer*, No. 2:06-CV-13467, 2006 WL 2347615, at *2 (E.D. Mich. Aug. 11, 2006) (Cohn, J.); *Drohan*, 475 Mich. at 164, 715 N.W.2d at 791-92; *Claypool*, 470 Mich. at 730 n.14, 684 N.W.2d at 286 n.14.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.    *Recommendation Regarding Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability.  *See* 28 U.S.C. § 2253(c)(1).  The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000).  Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue.  Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

19

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84.  Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable."  *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.  The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue."  FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id*., advisory committee note, 2009 amendments.  In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

If the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also conclude that petitioner is not entitled to a certificate of appealability.  It is clear that petitioner's sentencing guidelines and credit claims are not cognizable on habeas review, and thus the resolution of these claims is not reasonably debatable.  Further, every court to have considered the issues have held that the denial of jail credit to a parolee sentenced on a new offense

does not violate the Double Jeopardy or Equal Protection Clause, and thus the resolution of these claims is not reasonably debatable. Likewise, it is clear that the *Blakely* rule is inapplicable to the determination of a minimum sentence under Michigan's indeterminate sentencing scheme, and thus the resolution of petitioner's *Blakely* claim is not reasonably debatable. Finally, because any challenge to the scoring of OV 3 would have been contrary to the language of the statute and would have presented a novel issue of law, and because counsel cannot be deemed ineffective for failing to raise a novel issue of law, the resolution of petitioner's ineffective assistance claim is not reasonably debatable. Accordingly, the Court should conclude that petitioner is not entitled to a certificate of appealability.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus. If the Court accepts this recommendation, the Court should also deny petitioner a certificate of appealability.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in FED. R. CIV. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the

objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 1/4/12

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record and   by electronic means or U.S. Mail on January 4, 2012.

s/Eddrey Butts
Case Manager